# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC SIMILA and DIANTHA SIMILA,<br><br>                                   Plaintiffs,<br><br>vs.<br><br><br>AMERICAN STERLING BANK, et al.,<br><br>                                  Defendants. | CASE NO. 09-CV-781 JLS (CAB)<br><br>**ORDER: (1) GRANTING DEFENDANT COUNTRYWIDE HOME LOANS' MOTION TO DISMISS; AND (2) GRANTING DEFENDANT NATIONAL CITY MORTGAGE'S MOTION TO DISMISS**<br><br>(Doc. Nos. 40 & 41.) |

Presently before the Court is Defendant National City Mortgage's ("National City") motion to dismiss and Defendant Countrywide Home Loans' ("Countrywide") motion to dismiss Plaintiffs' second amended complaint ("SAC"). (Doc. Nos. 38, 40, & 41.) Also before the Court are Plaintiffs' oppositions to both motions to dismiss (Doc. Nos. 43 & 44) and National City and Countrywide's replies. (Doc. Nos. 45 & 47.) For the reasons stated below, the Court **GRANTS** National City's motion to dismiss and **GRANTS** Countrywide's motion to dismiss.

## BACKGROUND

Plaintiffs allege that they are the owners of the subject property located at 12880 Stone Canyon Road, Poway, CA 92064. (SAC ¶ 1.) On or about December 1, 2006, Plaintiffs contend that they received—at the request of InterBanc Mortgage ("InterBanc"), American Sterling Bank ("ASB"), and others—a loan from ASB and a loan from American Sterling Bank 2nd Mortgage

Division ("ASB-2"). (*Id.* ¶ 17.) These two loans are collectively referred to as the "loans." (*Id.* ¶ 9.) In this loan transaction, Plaintiffs allege that InterBanc is the broker, ASB and ASB-2 are the originating lenders, and National City and Countrywide are the servicers. (*Id.* ¶¶ 2, 3, 5, 6, & 7.)

Plaintiffs initiated this action on April 16, 2009, by filing a complaint in this Court. (Doc. No. 1.) On June 12, 2009, National City moved to dismiss the complaint for failure to state a cause of action. (Doc. No. 4.) On August 7, 2009, Countrywide filed a separate motion to dismiss the complaint. (Doc. No. 7.) Before the Court ruled on these motions, Plaintiffs filed a First Amended Complaint ("FAC") on September 8, 2009.[1] (Doc. No. 13.) Responding to the FAC, Countrywide and National City again filed separate motions to dismiss. (Doc. Nos. 16 & 17.) And the Court ultimately granted both motions. Plaintiffs then filed a Second Amended Complaint ("SAC") on June 7, 2010. (Doc. No. 38.)

The SAC alleges eight causes of action arising from the defendants' alleged wrongful acts before the initiation of the Plaintiffs' loans as well as during the servicing period. (*See* SAC ¶ 18.) The claims alleged are (1) Violation of the Real Estate Settlement Protection Act ("RESPA"), 12 U.S.C. § 2605 et seq.; (2) Violation of Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (3) Violation of California's Business and Professions Code § 17200 et seq.; (4) Negligent Misrepresentation; (5) Fraud; (6) Rescission; (7) Quasi Contract; and (8) Determination of Validity of Lien.

National City and Countrywide filed separate motions to dismiss the SAC in June 2010. (Doc. Nos. 40 & 41.) Plaintiffs filed separate oppositions on July 29, 2010. (Doc. Nos. 43 & 44.) National City and Countrywide filed their replies on August 4 and 5, 2010. (Doc. Nos. 45 & 47.) A hearing on the motions to dismiss the SAC was thereafter vacated, and the matter was taken under submission without oral argument.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

---

[1] As such, the Court thereafter denied the motions to dismiss the original complaint as moot. (Doc. No. 29.)

motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

1 1986)). In other words, where leave to amend would be futile, the Court may deny leave to
2 amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## DISCUSSION

**I.     Real Estate Settlement Procedures Act: 12 U.S.C. § 2605**

Plaintiffs' first cause of action is for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq. RESPA requires lenders to comply with specific notice requirements in the context of mortgage loans. Plaintiffs contend that Defendants Countrywide and National City violated RESPA by failing to adequately respond to Plaintiffs' Qualified Written Requests ("QWR") for information regarding the loans. (SAC ¶¶ 55–56.)

When a loan servicer receives a QWR, the servicer is obligated to respond with an acknowledgment letter within twenty business days and respond to the QWR within sixty business days. 12 U.S.C. §§ 2605(e)(1)–(3). The servicer's duties when responding are limited. "Section 2605 only requires servicers to respond to a proper QWR by correcting the account discrepancy, explaining why the account is correct, or if the information is unavailable, by providing contact information for someone who can assist the borrower with her inquiry." *Arango v. Recontrust Co., N.A.*, 2010 WL 2404652 (S.D. Cal. June 14, 2010).

Plaintiff alleges the existence of four QWRs. Two were sent to Countrywide and two were sent to National City. The Court will discuss the QWRs as they pertain to each defendant.

*A.     QWRs to Countrywide*

Plaintiffs allege that they sent QWRs to Countrywide on or about November 10, 2008, and on or about January 20, 2009. (SAC ¶ 56.) Plaintiffs allege that Countrywide failed to acknowledge receipt of the QWRs within 20 days and failed to "fully" respond within 60 days. (*Id.*)

Plaintiffs allegations fail to state a claim upon which relief can be granted. Plaintiffs' indicate that Countrywide failed to "fully" respond, implying that Countrywide did respond. (*Id.* ¶¶ 56(b) & (j).) And Plaintiffs' fails to allege facts showing that Countrywide's response failed to meet RESPA's requirements. Plaintiffs allegedly requested information instead of notifying Countrywide of an account discrepancy. Even if Countrywide failed to provide the requested

information, Plaintiffs fail to allege facts showing that Countrywide failed to provide contact information for someone who could assist Plaintiffs.

Additionally, Plaintiffs fail to allege damages recoverable under RESPA. RESPA allows recovery of both statutory and actual damages. 12 U.S.C. §§ 2605(f)(1)(A)–(B). In order to recover statutory damages, plaintiffs must allege a pattern or practice of noncompliance with RESPA. Plaintiffs allege no facts supporting such damages.

Instead, Plaintiffs make a claim for actual damages, alleging that "as a proximate result of the negligent conduct of the defendants . . . Plaintiffs sustained damages, including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, and other damages." (SAC ¶ 57.) Other than this conclusory statement, however, the SAC fails to provide any allegations as to how the Plaintiff's alleged breach of RESPA duties resulted in actual loss. While instances of emotional distress, time spent away from employment, and negative credit ratings have been interpreted as "actual damages" under § 2605(f)(1)(A), conclusory allegations of such loss are nonetheless insufficient to allege that Plaintiff suffered actual loss. *Espinoza v. Reconstruct Co.*, 2010 WL 2775753, at *4 (S.D. Cal. July 13, 2010). For example, Plaintiffs claim a loss of credit but do not indicate "how these pecuniary losses were sustained." *Hawkins v. Homecomings Financial, LLC*, 2010 WL 1710274, at * 2 (C.D. Cal. April 26, 2010).

For the reasons stated above, the Court hereby **GRANTS** Countrywide's motion to dismiss the RESPA claim. Plaintiffs fail to allege facts establishing a RESPA violation and fail to establish damages.

**B.    *QWRs to National City***

Plaintiffs allege that they sent QWRs to National City on or about November 21, 2008 and on or about January 20, 2009. (SAC ¶ 56.) Plaintiffs allege that National City failed to acknowledge receipt of the QWRs within 20 days and failed to "fully" respond within 60 days. (*Id.*) These alleged QWRs are nearly identical in form and substance to those allegedly sent to Countrywide. As a result, the Court comes to the same findings and **GRANTS** National City's motion to dismiss the RESPA claim.

///

## II.  Truth in Lending Act: 15 U.S.C. 1601 et seq.

Plaintiffs' second cause of action is for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.  TILA provides for minimum disclosure requirements in consumer credit transactions.  Plaintiffs allege that Defendants violated 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23 ("Regulation Z") regarding deficiencies in the purported Notice of Right to Cancel furnished to Plaintiffs.  (SAC ¶ 65.)  Plaintiffs further contend that InterBanc, ASB, and Countrywide "violated TILA at the time of origination" for various reasons (*Id.* ¶ 70) and that Countrywide "also failed to satisfy its obligations under TILA because its failure to adequately respond to Plaintiffs' QWR left Plaintiffs unable to determine [Countrywide's] rights or interests in the loans." (*Id.* ¶ 71.)  As a result of these violations, Plaintiffs contend that they are entitled to rescission of the loan[2] as well as money damages.  (*Id.* ¶ 72.)

Both Countrywide and National City contend that Plaintiffs' TILA damages claim is time-barred by the one-year statute of limitations, 15 U.S.C. § 1640(e).  A TILA damages claim must be brought within one year of the alleged violation and where "the violation is one of disclosure in a closed-end credit transaction, 'the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement.'" *Tucker v. Beneficial Mortgage Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) (quoting *Smith v. Am. Fin. Sys.*, 737 F.2d 1552 (11th Cir. 1984)); *see also Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996).  In this case, the loan transaction occurred on or about December 1, 2006, and Plaintiffs did not file their original complaint until April 15, 2009, over two years later.  (*See* SAC ¶ 17.)  Thus, the complaint was filed outside the one-year limitation period for damages under TILA.

Plaintiffs argue, however, that the Court should equitably toll the limitations period.  The Court may suspend the statute of limitations for TILA violations "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

In support of equitable tolling, Plaintiffs first allege various wrongdoings by Countrywide and National City. The wrongdoings include rushed signing of the loan, complicated and

---

[2] Plaintiffs' rescission claim is discussed *infra* Section V.

1 misleading loan documents, no explanation of material terms, and misleading interest rates and
2 APR calculations. (SAC ¶ 60.) Unfortunately, alleging these wrongdoings only indicates that
3 Plaintiffs found the loan process complicated and misleading, but waited more than two years to
4 voice any concerns. *See Walker v. Equity 1 Lenders Group*, 2009 WL 1364430, at *6 (S.D. Cal.
5 May 14, 2009). The allegations do not provide a basis for equitable tolling.

6       Plaintiffs' second basis for equitable tolling is related to the notice of right to cancel.
7 Plaintiffs allege that the notice of right to cancel "did not properly apprise Plaintiffs of any date by
8 which they could can cancel" the loans. (SAC ¶ 26.) And as a result of this fraud, Plaintiffs argue
9 that they are entitled to equitable tolling. (*Id.*) This Court disagrees. Plaintiffs' allege that the
10 deficiencies "were apparent from the face of the Notice of Right to Cancel." (*Id.* ¶ 66.) In doing
11 so, the Plaintiffs call into question why equitable tolling would be necessary at all; the apparent
12 deficiencies gave the Plaintiffs a reasonable opportunity to discover any fraud or nondisclosure.

13       Moreover, Plaintiffs received a letter on or about January 16, 2007, admitting that the
14 notice of right to cancel was incorrect. This also gave Plaintiffs a reasonable opportunity to
15 discover any fraud or nondisclosure. And even if the statute of limitations was suspended until
16 January 16, 2007, the Plaintiffs still failed to file within one year.

17       Accordingly, the Court finds that Plaintiffs' TILA claims for damages is time-barred and
18 equitable tolling was not sufficiently pled. Both Countrywide and National City's motions to
19 dismiss the TILA cause of action are therefore **GRANTED**.

20 **III. Violation of Unfair Competition Law: Cal Bus. & Prof. Code § 17200 et seq.**

21       To state a cause of action under the Unfair Competition Law ("UCL"), Plaintiffs must
22 allege that Defendants' actions were unlawful, unfair or fraudulent. *In re Pomona Valley Med.*
23 *Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007). Plaintiffs' third cause of action alleges that
24 "Defendants have engaged in business practices that are unlawful, unfair and fraudulent." (SAC
25 ¶ 74.)

26 **A.** *Unlawful Prong*

27       Plaintiffs allege that "Defendants' business practices are unlawful as the activities alleged
28 herein, i.e. those described in the foregoing causes of action, are forbidden by law." (*Id.* ¶ 75.)

1 "The 'unlawful' practices prohibited by . . . section 17200 are any practices forbidden by law, be it
2 civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *South Bay*
3 *Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 881 (1999) (citations
4 omitted). Under the unlawful prong, therefore, the UCL "borrows" violations of other laws and
5 makes them independently actionable under the UCL. *See id.*; *see also Scripps Clinic v. Superior*
6 *Court*, 108 Cal. App. 4th 917, 938 (2003). As explained throughout this order, because all causes
7 of action which this claim "borrows" are dismissed, both Countrywide and National City's
8 motions to dismiss this claim for unlawful competition are **GRANTED.**

### B. Unfair Prong

10 Plaintiffs also contend that Defendants' business practices are unfair. According to
11 Plaintiffs, they are unfair because the business practices "offend public policy, are immoral,
12 unethical, oppressive, and substantially injurious to consumers." (SAC ¶ 76.) Plaintiffs claim that
13 the Defendants brokered, executed, and serviced the loans without regard to Plaintiffs' financial
14 condition. (*Id.* ¶ 66.) And at the same time, the Plaintiffs had relied on Defendants
15 representations regarding the affordability of the loans. (*Id.* ¶ 76.) Additionally, Plaintiffs contend
16 that Defendants' business practices are unfair because the Plaintiffs are now "burdened with a
17 higher interest rate, a mortgage that did not pay off the debts . . . and the period of Plaintiffs'
18 mortgage is longer than it should be." (*Id.* ¶ 77.)

19 A claim that is not "unlawful" under the UCL may still be considered "unfair." *See Cel-*
20 *Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180–81 (1999). In *Cel-Tech*, the
21 California Supreme Court ruled that conduct is "unfair" between business competitors under the
22 UCL only if it is "tethered" to an underlying law. *Cel-Tech*, 20 Cal. 4th at 186–87. Whether this
23 "tethering" test is applicable to allegations of unfair competition as applied to consumers,
24 however, is not settled. California appellate courts have split on whether to apply the "tethering"
25 test or an older "balancing test." *Compare Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845,
26 854 (2002) (applying "tether" test to consumers); *and Scripps Clinic*, 108 Cal. App. 4th at 938
27 (same); *with Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718–19 (2001)
28 (applying balancing test). The Ninth Circuit has not stated its preference. *See Lozano v. AT & T*

*Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007).

The Court finds that the "tether" test is more in line with the California Supreme Court's reasoning in *Cel-Tech*. The *Cel-Tech* court found, and this Court agrees, that the balancing test to determine unfairness is "too amorphous and provide[s] too little guidance to the courts." *Cel-Tech*, 20 Cal. 4th at 185. Accordingly, the Court finds that Plaintiffs have not sufficiently "tethered" their allegations of unfair competition to any underlying law and thus both Countrywide and National City's motions to dismiss this claim are **GRANTED.**

### C. *Fraudulent Prong*

Plaintiffs allege that "Defendants business practices were fraudulent because their activities were deceptive to the public. Among other things, [D]efendants represented to Plaintiffs that very favorable loans, loan terns and interest rates were available, when in fact, they were not." (SAC ¶ 78.) The fraud and negligent misrepresentation claims, discussed below, are not adequately pled and therefore are dismissed. Accordingly, Plaintiffs' UCL claim as it relies on allegations of fraud fails. As such, both Countrywide and National City's motions to dismiss this claim are **GRANTED**.

### IV. Negligent Misrepresentation and Fraud

To state a claim for fraud and negligent misrepresentation, Plaintiffs must allege each element factually and specifically. *See Glenn Holly Entm't. Inc. v. Tektronix,* Inc., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004); *see also* Fed. R. Civ. P. 9(b) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Rule 9(b) requires Plaintiffs to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. *Id.*; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003); *Sebastian Intern., Inc. v. Russolillo*, 128 F. Supp. 2d 630, 634–35 (2001). While each false statement made by each defendant does not need to be pled, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764–65

1  (citation omitted). Further, "[t]he plaintiff must set forth what is false or misleading about a
2  statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why
3  the statement or omission complained of was false or misleading." *In re Glenfed, Inc. v. Securities*
4  *Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994).

5  **A.  *Negligent Misrepresentation***

6  *(1)  Negligent Misrepresentation Count 1*

7  Plaintiffs allege that ASB, ASB-2 and InterBanc are liable for the negligent
8  misrepresentations made by InterBanc employee Steve Ferguson. (SAC ¶ 82.) Plaintiff does not
9  make any allegations linking this count to Countrywide or National City. But if even Plaintiffs
10 did, they fail to state a claim.

11 Plaintiffs allege that Ferguson informed Plaintiffs that the loans were in their best interest
12 and insinuate that this statement was false or misleading because Ferguson "did not explain to
13 Plaintiffs that the [first loan] was a negative amortized loan." (*Id.* ¶¶ 82 & 84.) Plaintiffs also
14 allege that Ferguson did not explain that he was receiving a commission. (*Id.* ¶ 85.) Plaintiffs
15 have made these allegations in a vacuum and failed to set forth what is false or misleading about
16 Ferguson's statements. Plaintiffs do not indicate why a negative amortized loan was not in their
17 best interest or why Ferguson's commission is relevant. The claim, therefore, does not meet the
18 pleading requirements of Rule 9(b).

19 *(2)  Negligent Misrepresentation Count 2*

20 Plaintiffs allege that Countrywide and/or National City "aided, abetted and were in a
21 contractual relationship with ASB and ASB-2 and other investors as to downstream transactions
22 regarding transfer and servicing of the loans." (*Id.* ¶ 90.) This is the extent of the claim, and it
23 also fails because it does not meet the pleading requirements of Rule 9(b).

24 *(3)  Negligent Misrepresentation Count 3*

25 Plaintiffs allege that Countrywide made misrepresentations of material fact by representing
26 to Plaintiffs that it had the authority and right to foreclose on the first loan. (*Id.* ¶ 91.)
27 Representing the right to foreclose was allegedly a misrepresentation because Countrywide
28 allegedly knew it had no right to foreclose. And Countrywide allegedly knew it had no right to

foreclose because it knew that the first loan was defective at origination. (*Id.* ¶ 93.)

Plaintiffs allege that National City misrepresented its right to service the second loan. (*Id.* ¶ 94.) National City allegedly knew it had no right to service the second loan because it knew of the improper notice of right to cancel that rendered the second loan defective at origination. (*Id.* ¶ 94.)

Plaintiffs claims against Countrywide and National City fail for the same reason—the inability to clear Rule 9(b). To the extent Plaintiffs built a negligent misrepresentation claim, it is filled only with conclusory statements. And with each amended pleading, Plaintiff provides a new conclusion sufficient to match an element of the claim but insufficient to clear Rule 9(b). In this count, Plaintiffs improved on the FAC by conclusively stating that Countrywide "knew that the [first loan] was defective at origination" and that National City "knew that the [second loan] was defective at origination" because of the improper notice of right to cancel. (*Id.* ¶ 94.) Unfortunately, this does not cure the lack of legal or factual support for why such a right to foreclose or service the loan was a misrepresentation. (*See* Doc. No. 32 at 12.)

***B.    Fraud***

*(1)    Fraud Count 1*

Plaintiffs set forth the first fraud count against Interbanc, ASB, and ASB-2. (SAC ¶ 101) Although the first count states no allegations with regard to Countrywide or National City, Plaintiffs attribute blame by arguing that Countrywide and National City "assumed the responsibilities owed to Plaintiffs by purchasing/assuming" the loans. (*Id.* ¶ 100.) This conclusory allegation is insufficient to plead fraud against Countrywide and National City.

*(2)    Fraud Count 2*

Except for four new sentences, Plaintiffs second fraud count is identical to the second fraud count found in the FAC. Plaintiff improved on the FAC by alleging that (1) Countrywide knew that the first loan was defective at origination and nonetheless proceeded to foreclose, (2) National City knew that the second loan was defective at origination because of the improper notice of right to cancel, (3) National City represented to Plaintiffs that it had a right to service the second loan, and (4) National City misrepresented its right to service the second loan in order to collect

1  payments from Plaintiffs. (*Id.* ¶ 118.) These additional allegations are identical to those in the
2  third count for negligent misrepresentation. And they also do not cure the lack of sufficient legal
3  or factual support necessary for a fraud claim.

4  *C.     Conclusion*

5  Plaintiff pleaded three counts of negligent misrepresentation and two counts of fraud. For
6  the reasons stated above, the Court **GRANTS** both Countrywide and National City's motions to
7  dismiss the negligent misrepresentation and fraud claims.

8  **V.     Rescission**

9  Plaintiffs' sixth cause of action is for rescission. Plaintiffs claim they are "entitled to
10 rescind the loans because the note and contract were defectively and/or fraudulently consummated
11 in violation of applicable laws." (SAC ¶ 131.) Plaintiffs appear to base their right of rescission on
12 TILA violations, 15 U.S.C. § 1635(a), and 12 C.F.R. § 226.23 ("Regulation Z"). (SAC ¶¶
13 135–36.) Regulation Z provides that a borrower's right to rescind expires three business days after
14 the last of the closing day, the day the TILA disclosures were disclosed and delivered to the
15 borrower, or the day the Notice of Right to Cancel is delivered to the borrower, unless the required
16 notices and disclosures were not properly delivered. *See* 12 C.F.R. § 226.23(a). In that case, "the
17 right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's
18 interest in the property, or upon sale of the property, whichever occurs first." *Id.*; *see also* 15
19 U.S.C. § 1635(f).

20 In their opposition, Plaintiff's assert that they "seek rescission based on equitable
21 principles." (Doc. No. 43 at 20; Doc. No. 44 at 19.) Plaintiffs allege that they are entitled to
22 rescission of the contract (the loans) because "California law renders contracts, or contract terms,
23 unenforceable if they were fraudulently induced by false representations." (Doc. No. 43 at 21;
24 Doc. No. 44 at 20 (citing Cal. Civ. Code § 1668).) Plaintiffs therefore rely on their fraud and
25 negligent misrepresentation claims, at least in part, to assert their entitlement to rescind the loans.
26 As explained above, Plaintiffs have not adequately pled either claim and therefore Plaintiffs'
27 rescission claim is dismissed to the extent it relies on Countrywide and National City's alleged
28 fraud or negligent misrepresentations.

Furthermore, the Court has discretion to require Plaintiffs to plead their ability to tender in order to maintain a rescission claim. *See Yamamoto v. Bank of New York*, 328 F.3d 1167, 1173 (9th Cir. 2003); *See also* Order Dismissing First Amended Complaint (Doc. No. 32.) After considering the circumstances, the Court finds that Plaintiffs must plead their ability to tender and further finds that Plaintiffs have not done so. *See Yamamoto*, 328 F.3d at 1173. To the contrary, Plaintiffs have alleged that they "were driven to file bankruptcy." (SAC ¶ 21.) Considering that Plaintiffs, if they prevail in this action, would ultimately have to tender under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d), their allegation that they were forced to file bankruptcy calls into question their ability to do so.

Plaintiffs also allege that they "tendered full performance in the form of the deed to the Subject Property." (*Id.* ¶ 133.) This is insufficient for tender because the lenders did not provide Plaintiffs with property. They provided Plaintiffs with money to purchase property, and it is that money that needs to be returned. Because Plaintiffs have not pleaded their ability to tender, the Court **GRANTS** both Countrywide and National City's motions to dismiss Plaintiffs' claim for rescission for failure to plead the ability to tender.

## VI. Quasi-Contract

Plaintiffs' seventh cause of action is for "quasi contract." The allegations and Plaintiffs' opposition, however, make clear that this claim is really a claim for unjust enrichment. (*See* Doc. No. 43 at 22; Doc. No. 44 at 21–22.) To state a claim for unjust enrichment, Plaintiffs must plead "the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000). The mere receipt of a benefit, however, does not itself require restitution. *See Delino v. Platinum Cmty. Bank*, 2009 WL 2366513, at *8 (S.D. Cal. July 30, 2009) (quoting *Dinosaur Develop., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989)).

Here, Plaintiffs allege that a quasi-contractual relationship exists between Plaintiffs and Countrywide and/or National City because the two defendants demanded payments from Plaintiffs on the Note and the two defendants implied that Plaintiffs have a contractual obligation to pay them. (SAC ¶ 139.) Plaintiffs further allege that Countrywide and National City have received

1  and unjustly retained fees, costs, commissions, payments, and/or other money.  (*Id.* ¶ 142.)
2  Accordingly, "[b]y their misrepresentations, omissions and other wrongful acts alleged heretofore,
3  defendants, and each of them, were unjustly enriched at the expense of Plaintiffs, and Plaintiffs
4  were unjustly deprived, and are entitled to restitution."  (*Id.*  ¶ 144.)

5　　　　The Court finds that Plaintiffs have not sufficiently pled unjust enrichment.  The SAC
6  alleges that Defendants received a benefit at the expense of Plaintiffs, but does not sufficiently
7  allege that any such receipt or retention was "unjust."  Plaintiffs' allegations rely on the actions
8  discussed above, which the Court dismisses.  Without sufficient allegations of wrongdoing, there
9  is insufficient support for the allegations that any benefit received by Countrywide or National
10 City was unjust.  Accordingly, the Court **GRANTS** both Countrywide and National City's motions
11 to dismiss this claim.

12 **VII.    Determination of Validity of Lien**

13　　　　Plaintiffs eighth cause of action contends that "the defective documentation, false
14 representations and/or fraud that induced Plaintiffs to enter into the loans render the securities
15 interest invalid and unenforceable" and seeks a declaratory judgment that the lien is therefore void
16 *ab initio*.  (*Id.* ¶¶ 146–47.)  Because all causes of action upon which this cause of action relies
17 have been dismissed, above, the Court **GRANTS** Countrywide and National City's motion to
18 dismiss this eighth cause of action, as well.

19                                                              **CONCLUSION**

20　　　　For the reasons stated above, the Court **GRANTS** both Countrywide and National City's
21 motions to dismiss in their entirety.  Plaintiffs' SAC is **DISMISSED WITH PREJUDICE**.  The
22 Clerk shall close the file.

23　　　　**IT IS SO ORDERED.**

25 **DATED: October 12, 2010**

26                                                                  _____
                                                                    **Honorable Janis L. Sammartino**
27                                                                  **United States District Judge**